*In re* COLUMBIAN STORAGE & TRANSFER CO.

This case is controlled by *In re Border Cities Trucking Co.,* ante, 385.

Appeal from Michigan Public Utilities Commission. Submitted October 21, 1932. (Docket No. 183, Calendar No. 36,745.) Decided January 3, 1933. Rehearing denied April 21, 1933.

Columbian Storage & Transfer Company applied to Michigan Public Utilities Commission for permit to operate as a private carrier of freight by motor vehicle. Application denied. Applicant appeals. Reversed.

*Irving H. Smith,* for appellant.

*Paul W. Voorhies,* Attorney General, and *Hugh E. Lillie,* Assistant Attorney General (*Kit F. Clardy,* of counsel), for appellee.

*Clark, Klein, Ferris & Cook* and *Joseph H. Parsons, amici curiæ.*

BUTZEL, J. Columbian Storage & Transfer Company applied to the Michigan public utilities commission for a permit to operate as a private carrier of freight by motor vehicle. The application was denied, without prejudice to appellant's right to file a new application for a permit as a public carrier. Applicant has appealed, asserting he is entitled to a permit as a private carrier in accordance with the provisions of Acts Nos. 212 and 312, Pub. Acts 1931.

---

As to regulation of use of highway by private motor vehicles for hire, see annotation in 56 A. L. R. 1056; 81 A. L. R. 1415.

Applicant was incorporated in 1921. Previous thereto it and its predecessors were engaged in the cartage business in the city of Grand Rapids for more than 25 years. For the past 16 years it has also conducted a warehouse business. It owns and operates a large warehouse in the city of Grand Rapids, with a capacity of over 100,000 square feet. It has invested approximately one-half million dollars in its storage buildings and equipment. This includes 10 trucks, for the operation of six of which it sought the permit.

Applicant's business may be divided into several somewhat interrelated classes. In addition to the large storage business, it also does a city cartage business, which is not affected by the Michigan public utilities commission acts. See Act No. 212, § 18, and Act No. 312, § 13, Pub. Acts 1931. Applicant has, for a considerable period, attended to the trucking or hauling for four large patrons, for whom it operates its trucks between fixed termini, over fixed routes, and upon a more or less regular schedule. It performs this service under special contracts with these four patrons and does not haul or transport goods for anyone else in this manner. It transports only one kind of product for each of the four patrons, whose business with applicant runs into very large sums of money and exceedingly heavy tonnage. These patrons rely upon applicant to do their hauling through western Michigan. As a rule, they use Grand Rapids as the focal point to and from which the goods are to be shipped. One of these patrons at one time used applicant's warehouse facilities for the storage of as much as 20,000 to 30,000 bags of sugar, but recently has stored only 3,000 bags. In hauling for these four patrons, applicant works under special contracts and must be classified as a private carrier.

The more serious question arises out of the fourth class of business in which applicant is engaged. It consists of the hauling of goods from the warehouse, in which they have been previously stored, to such places in western Michigan as the owners or consignors direct from time to time. For this purpose a standard form bill of lading, made out at the time of shipment, is used. As to these warehoused goods, there is no fixed place for delivery until designated by the owner at the time shipping directions are given. There are no fixed termini, no fixed routes, no special times for delivery. The goods consist exclusively of products that have been stored in the warehouse. Some of the patrons constantly keep stocks of their goods in the warehouse, and, after directing applicant to make deliveries, replenish the stock in storage with new goods from time to time. To these patrons applicant issues a perpetual inventory, made out from day to day, showing the amount of goods still remaining in storage.

In a few instances, the company handled shipments for owners of goods not warehoused, but it claims to have discontinued this practice entirely, and states its willingness and understanding that a permit as a private carrier will be restricted solely to the hauling of goods that have been warehoused and to the property of the four large patrons hereinbefore mentioned. Applicant does not hold itself out indiscriminately to the public as a transporter of goods. It does agree that for an additional charge, and under an independent bill of lading, it will transport goods that have first been stored in its warehouse, to such places as the owners may direct, but in a manner and over routes of its own selection. It claims that one of the chief advantages

it offers in attracting business is the practice of making immediate deliveries of the goods warehoused, so that the owners can furnish their customers with goods without any loss of time whatsoever.

Applicant's total warehouse earnings are about seven and one-half times as large as its earnings from its long-distance hauling of stored goods, and over three times as large as that derived from the combined hauling of warehoused goods and the property shipped by its four large patrons. The record leaves no doubt but that, aside from carting and hauling for the four large patrons, applicant's main business is that of conducting a warehouse and the hauling of goods is incidental thereto. The maintenance of the warehouse is not a subterfuge to conceal the carrying on of a general carrier business.

The case is ruled by that of *In re Border Cities Trucking Co., ante,* 385. We find that appellant is a private carrier and is entitled to a permit under Act No. 212, Pub. Acts 1931, §§ 5, 6, which provide that a permit as a private carrier "shall be issued as a matter of right upon proof of full compliance with all provisions of law."

The order of the appellee is herewith reversed. No costs will be allowed.

MCDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.